DONALDSON, Judge.
Ethel L. Hooks (“Hooks”), individually and on behalf of her four minor children, Roger J. Hooks, Jr., Johnathan[1] Hooks, Jordan Woodyard, and Janae Woodyard (collectively the “the Hookses”), appeals from a summary judgment entered in favor of Joseph D. Pettaway (“Pettaway”). We affirm the judgment as to those issues properly raised by Pettaway in his motion for a summary judgment and for which the burden shifted to Hooks to present substantial, admissible evidence in opposition. We reverse the judgment as to those issues not properly raised by Pettaway in his motion for a summary judgment and for which the burden never shifted to Hooks to present substantial, admissible evidence in opposition.

Procedural History

This case was previously addressed by this court in Hooks v. Pettaway, 102 So.3d 391 (Ala.Civ.App.2012), in which we summarized the facts as follows:
“On September 14, 2009, Hooks and Pettaway were involved in an automobile accident in Mobile County. On February 26, 2010, Hooks sued Pettaway, alleging claims of negligence and wantonness. Pettaway answered, denying the material allegations of the complaint and asserting various affirmative defenses. The trial court scheduled a jury trial for March 14, 2011, but, after two requests for a continuance, the trial was rescheduled for September 27, 2011. On September 21, 2011, six days before the scheduled trial date, Hooks took the deposition testimony of a physician who had provided treatment in this case. On September 26, 2011, one day before the scheduled trial date, Pettaway moved for a summary judgment, relying on the physician’s deposition testimony taken by Hooks on September 21. In Petta-way’s summary-judgment motion, he alleged that Hooks had failed to prove *1153 that Pettaway’s actions had caused Hooks’s alleged injuries. On September 27, 2011, the day the jury trial was scheduled to occur, the trial court entered a summary judgment in favor of Pettaway.
“On September 28, 2011, Hooks filed a postjudgment motion to alter, amend, or vacate the summary judgment. In her postjudgment motion, Hooks argued, among other things, that Pettaway’s motion did not comply with the requirements of Rule 56, Ala. R. Civ. P., because, Hooks said, the motion was filed ‘too late.’ Hooks also argued in her postjudgment motion that she had objected to the trial court’s ‘entertaining the [summary-judgment] motion in violation of ... Rule [56].’ The trial court denied the postjudgment motion on November 8, 2011. Hooks timely appealed to the supreme court, and the supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.”
102 So.3d at 392. We reversed the summary judgment and remanded the case, holding that “allowing Hooks only one day’s notice to prepare a response to the [summary-judgment] motion caused inevitable prejudice to Hooks.” Id. at 393. We noted that, “[although Hooks may not ultimately prevail in opposing the motion for a summary judgment, she is entitled to an opportunity to respond to the motion.” Id.
On remand, Pettaway filed a second motion for a summary judgment, which he described as a “renewed motion.” Petta-way did not address the issue of his liability to Hooks in the renewed motion. Instead, he argued that there was a lack of substantial evidence indicating that the accident proximately caused any damage to Johnathan’s lung, one of the claims apparently made in the complaint.[2] In the renewed motion, he alleged:
“The impact [of the accident] was minor. There is no evidence of property [sic] and neither vehicle was towed. [The Hookses] refused medical treatment at the scene and in fact, never sought medical treatment the day of the accident. ([Ethel] Hooks depo. p. 56, 62, 66). Three days after the accident, Johnathan was treated for a collapsed lung (pneu[m]othorax) that [Hooks] allege[s] was caused by the accident.
“The only medical evidence or claim for damages presented by [Hooks] concerns [Johnathan]’s collapsed lung. There has been no evidence or testimony to substantiate that ... Ethel, Roger, Jordan or Janae were injured.
[[Image here]]
“The only injury alleged by [Hooks] is for [Johnathan]’s collapsed lung. No evidence or testimony substantiates injury to Ethel, Roger, Jordan or Janae. The only two doctors who treated [Johnathan] were unable to opine, within a reasonable degree of medical certainty, as to the cause of [Johnathan]’s injuries.”
In the renewed motion, Pettaway made a cursory argument regarding Hooks’s claim for medical expenses:
“Expert testimony is required to establish causation and the reasonableness and necessity of medical and hospital records and charges. Accordingly, [Hooks] must prove medical expenses are both reasonable and necessary.”
(Citations omitted.)
Attached as exhibits to Pettaway’s renewed motion for a summary judgment were excerpts from the deposition of Hooks, as well as from the depositions of Dr. Dwight Yoder and Dr. Kimberly Cole, *1154 physicians who had treated Johnathan at different times. In her deposition, Hooks described the circumstances of the accident and its aftermath, stating that Petta-way’s car hit her car from the back as she drove forward after being stopped at an intersection; that Johnathan complained of headaches and vomited twice shortly after the accident; and that she telephoned Dr. Yoder regarding Johnathan’s complaints the day of the accident and was told to monitor his condition. The excerpts from Hooks’s deposition indicate that the other three children complained of injuries following the accident; that Janae still complains of leg pain; and that Hooks took all the children to physicians within a few days of the accident.
The deposition excerpts of Dr. Yoder indicated that he saw Johnathan on September 17, 2009, three days after the accident. Dr. Yoder did not find that Johnathan had a pneumothorax, also known as a collapsed lung, at that time of his examination, but he found Johnathan’s symptoms to be consistent with asthma.
The excerpts from the deposition of Dr. Cole indicated that she saw Johnathan at an unspecified time, and that he apparently had a collapsed lung at the time of that examination. Dr. Cole testified that the collapsed lung could have been caused by influenza or the motor-vehicle accident, but she could not give an opinion as to which event actually caused the collapsed lung.
Hooks responded to the renewed motion with a 2 ½-page brief, in which she specifically referred to the claims apparently asserted in the complaint:
“On September 14, 2009, while waiting at a red light on Government Street, Mobile, Alabama, Plaintiff Ethel Hooks’ (‘Ms. Hooks’) vehicle was rear-ended by an automobile being driven by Defendant Joseph D. Pettaway, (Plaintiffs complaint @ para. 1.) Ms. Hooks’ four (4) minor children: Roger J. Hooks, Jr. (‘Roger’), Johnathan Hooks (‘Johnathan’), Jordan Woodyard (‘Jordan’), and Janae Woodyard (‘Janae’) were also in her car at the time of the collision. (Plaintiffs complaint @ para. 6-25).
“Within days, all of the [Hookses] sought medical attention; however, Johnathan suffered more serious physical injuries: post-traumatic head injuries and collapsed lung. (Deposition of Dr. Kimberly Cole, attached as Exhibit A, @ pages 29-33).
“Ms. Hooks claims general bodily injury, medical expenses, lost wages and income, pain and suffering, mental anguish, emotional distress, and damages to the vehicle she was driving. (Complaint @ para. 2 & 4). On behalf of her children, she alleged the following damages: general bodily injury, medical expenses, pain and suffering, mental anguish and emotional distress. (Complaint @ para. 6-25).”
Hooks claimed in her response that a summary judgment was not appropriate because there were genuine issues of material fact regarding Pettaway’s alleged negligence in causing the accident. Her sole argument consisted of the following:
“[Pettaway] does not, and cannot, contend that he did not have a duty to stop at the red light, that he breached that duty, [or] that the breach of that duty to stop proximately caused the collision that Ms. Hooks and her children complain about. Instead, he argues that the damage of medical bills and the specific injury (collapsed lung) to Johnathan cannot be proven, and therefore, he is not liable for all the other injuries caused by this accident. Ms. Hooks and her children also claim damages ranging from lost wages and income to mental anguish. And [Pettaway] has not offered any evidence, much less substantial evi *1155 dence, disproving that those damages were not caused by him. The initial burden of proof is on the moving party to show the inexistence of any genuine factual issues.”
(Citation omitted.)
Hooks attached deposition excerpts of Dr. Cole as well. Hooks’s entire argument regarding the deposition testimony of Dr. Cole consisted of a single sentence: “Nevertheless, Dr. Cole’s medical testimony provides evidence that Johnathan’s collapsed lung and head trauma resulted from the collision. (See Ex. A, Dr. Cole’s depo.)” In the deposition excerpts submitted by Hooks, Dr. Cole testified that she examined Johnathan and diagnosed him with “posttraumatic headache,” or “headache after a trauma.” The date of the examination is not made clear. At some point in time, not specifically indicated in the record, Dr. Cole diagnosed Johnathan with influenza “A” and also treated him for a collapsed lung. Dr. Cole identified the reported automobile accident, influenza, and asthma as risk factors that may have caused Johnathan’s collapsed lung, but she could not say to a reasonable degree of medical certainty which factor was the cause.
Regarding Pettaway’s assertion in his renewed motion that Hooks could not prove medical expenses as damages, the evidentiary materials submitted by the parties in support of and in opposition to the renewed motion for a summary judgment contain only one reference, raised in Dr. Cole’s deposition:
[Plaintiff’s counsel]: ... I don’t know whether or not I have any medical bills. I don’t know whether or not you have any knowledge of the medical bills. Or do you?
[Dr. Cole]: I don’t have any.
[Plaintiffs counsel]: You don’t know how much medical bills were in this case?
[Dr. Cole]: (Witness shakes head.) [Plaintiffs counsel]: I’m sorry. I should have brought that. Well, would you say that whatever services that you did provide or hospital provided were reasonable and necessary?
[Dr. Cole]: Yes.
[Plaintiffs counsel]: Okay. And whatever charges that were charged would have been reasonable and necessary also?
[Dr. Cole]: Yes.”
Pettaway’s renewed motion was set for a hearing to be held on September 21, 2012. Nothing in the record before us indicates whether the hearing occurred, and there is no reference to or transcript of any arguments made by the parties to the trial court if a hearing was held. On September 21, the trial court entered a summary judgment in favor of Pettaway as to all claims, stating as follows: “Defendant’s Renewed Motion for Summary Judgment filed by Pettaway Joseph D. is hereby Granted.”
On October 8, 2012, Hooks filed a motion to alter, amend, or vacate the summary judgment, contending that Petta-way’s renewed motion did not comply with the requirements of Rule 56, Ala. R. Civ. P.; that Pettaway had “failed to present substantial evidence of the absence of genuine issues of material fact in the rear-end collision automobile negligence case”; and that there were unspecified genuine issues of disputed fact remaining. The motion to alter, amend, or vacate was denied the next day. Hooks then filed a timely notice of appeal to the supreme court. The appeal was transferred to this court by the supreme court pursuant to § 12-2-7(6), Ala.Code 1975.
*1156 On appeal, Hooks phrases the issue to be addressed as whether Pettaway “failed to present substantial evidence of the absence of genuine issues of material fact that he was not negligent/wanton in this rear-end automobile negligence action.”

Standard of Review

“We review a summary judgment by the following standard:
“ ‘ “ ‘In reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact’ and whether the mov-ant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. South-Trust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
“ ‘Ex parte General Motors Corp., 769 So.2d 903, 906 (Ala.1999). When the basis of a summary-judgment motion is a failure of the nonmovant’s evidence, the movant’s burden, however, is limited to informing the court of the basis of its motion — that is, the moving party must indicate where the nonmoving party’s case suffers an evi-dentiary failure. See General Motors, 769 So.2d at 909 (adopting Justice Houston’s special concurrence in Ber-ner v. Caldwell, 543 So.2d 686, 691 (Ala.1989), in which he discussed the burden shift attendant to summary-judgment motions); and Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating that “a party seeking summary judgment always bears the initial responsibility of informing the [trial] court of the basis of its motion”). The moving party must support its motion with sufficient evidence only if that party has the burden of proof at trial. General Motors, 769 So.2d at 909.’
“Rector v. Better Houses, Inc., 820 So.2d 75, 79-80 (Ala.2001). Additionally, we ‘accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party.’ Bruce v. Cole, 854 So.2d 47, 54 (Ala.2003).”
Farr v. Gulf Agency, 74 So.3d 393, 397-98 (Ala.2011).
“The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury; the burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Berner v. Caldwell, 543 So.2d 686, 688 (Ala.1989).”
Williams v. Deerman, 724 So.2d 18, 20 (Ala.Civ.App.1998).

Discussion

In the renewed motion, Pettaway argued that there was not substantial evidence establishing that the automobile accident was a proximate cause of Johnathan’s collapsed lung.
“ ‘Proximate cause is an essential element of both negligence claims and wantonness claims.... Proximate cause is an act or omission that in a natural and *1157 continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred.’ ”
Lingefelt v. International Paper Co., 57 So.3d 118, 122-23 (Ala.Civ.App.2010) (quoting Martin v. Arnold, 643 So.2d 564, 567 (Ala.1994)).
Pettaway supported his argument on this issue with deposition excerpts from Johnathan’s two treating physicians. In his deposition, Dr. Yoder states he did not find evidence of a collapsed lung three days after the accident. Johnathan had a history of asthma, and Dr. Yoder treated Johnathan for the condition. At a later date, Dr. Cole treated Johnathan for a collapsed lung. Dr. Cole identified three risk factors that might have contributed to the collapsed lung: influenza, the automobile accident, and asthma. However, when asked whether influenza or the automobile accident was the cause of the collapsed lung, she could not say within a reasonable degree of medical certainty which condition caused the injury.
Dr. Cole identified multiple risk factors that were possible causes of Johnathan’s collapsed lung. “An injury may proximately result from concurring causes; however, it is still necessary that the plaintiff prove that the defendant’s negligence caused the injury.” Martin v. Arnold, 643 So.2d at 567.
“ ‘ “ ‘Proof which goes no further than to show an injury could have occurred in an alleged way does not warrant the conclusion that it did so occur, where from the same proof the injury can, with equal probability, be attributed to some other cause. Such a condition is equivalent to an absence of evidence to the true cause
Shanklin v. New Pilgrim Towers, L.P., 58 So.3d 1251, 1257 (Ala.Civ.App.2010) (quoting Peevy v. Alabama Power Co., 393 So.2d 971, 973 (Ala.1981), quoting in turn Maddox v. Ennis, 274 Ala. 229, 230, 147 So.2d 788, 789 (1962), quoting in turn Southworth v. Shea, 131 Ala. 419, 421, 30 So. 774, 775 (1901)). See Ex parte Harold L. Martin Distrib. Co., 769 So.2d 313, 315 (Ala.2000) (“ ‘When evidence points equally to inferences that are favorable and to inferences that are unfavorable to the moving party, the evidence lacks probative value; and the evidence may not be used to support one inference over another because such use is mere conjecture and speculation.’ ”) (quoting Turner v. Azalea Box Co., 508 So.2d 253, 254 (Ala.1987)).
The burden therefore shifted to Hooks to provide additional evidence or reasoning to raise her allegation as to the cause of Johnathan’s collapsed lung above the level of conjecture. Hooks did not offer substantial evidence in response to the renewed motion on this issue, and, thus, a summary judgment was due to be entered in favor of Pettaway on this issue. Further, Hooks offers no argument on appeal on this issue:
“ ‘Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived. Moore v. Prudential Residential Servs. Ltd. P’ship, 849 So.2d 914, 923 (Ala.2002); Arrington v. Mathis, 929 So.2d 468, 470 n. 2 (Ala.Civ.App.2005); Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App.2002). “This is so, because ‘ “it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.” ’ ” Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007) (quoting Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003), *1158 quoting in turn Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)).’ ”
Braden Furniture Co. v. Union State Bank, 109 So.3d 625, 630-31 (Ala.2012) (quoting White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008)). We, therefore, deem Hooks’s argument regarding Johnathan’s lung injury to be waived.
Albeit in a cursory manner, Pett-away also contended in the renewed motion that no medical expenses could be recovered by Hooks. “Medical bills are not recoverable unless they are sustained as a proximate cause of the defendant’s conduct.” Grimes v. Dodge, 816 So.2d 53, 56 (Ala.Civ.App.2001). “[T]he general rule regarding the recovery of medical expenses, including hospital expenses resulting from personal injuries, is that a plaintiff may recover those medical expenses that are reasonable and necessary.” Ex parte Hicks, 537 So.2d 486, 489-90 (Ala.1988). See Hodnett v. Harmon, 523 So.2d 443, 444 (Ala.Civ.App.1988) (“The law is well established in this state that, to recover for medical expenses, the plaintiff must prove that such expenses are reasonable.”). Pettaway referred to the depositions of Hooks, Dr. Yoder, and Dr. Cole to support his argument. The burden then shifted to Hooks to present substantial evidence in opposition. Hooks presented no evidence that any specific medical expenses were reasonable and necessary. Accordingly, we hold that summary judgment was appropriately entered in favor of Pettaway on the issue whether the Hooks-es’ medical expenses are recoverable as damages.
But Pettaway’s renewed motion stopped there; it addressed only those two issues. According to the record, there were claims still pending at the time the trial court ruled on the renewed motion; those claims, based on Pettaway’s alleged negligence and wantonness, sought damages for Hooks’s lost wages and income and damage to the vehicle she was driving, as well as damages for bodily injury other than Johnathan’s collapsed lung, pain and suffering, mental anguish, and emotional distress suffered by the Hookses. Those claims were not addressed in Pettaway’s renewed motion. The burden therefore never shifted to Hooks to address those claims or to present evidence in opposition to those claims.
“ ‘The [summary-judgment] movant has the initial burden of making a prima facie showing that there is no genuine issue of material fact; if the movant makes that showing, the burden then shifts to the nonmovant to present substantial evidence of each element of the claim challenged by the movant.’ Harper v. Winston County, 892 So.2d 346, 349 (Ala.2004) (emphasis added). However, if the movant does not satisfy his initial burden, ‘then he is not entitled to judgment. No defense to an insufficient showing is required.’ Ray v. Midfield Park, Inc., 293 Ala. 609, 612, 308 So.2d 686, 688 (1975) (emphasis added). ‘A motion that does not comply with Rule 56(e)[, Ala. R. Civ. P.,] does not require a response in defense from the nonmovant.’ Horn v. Fadal Machining Ctrs., LLC, 972 So.2d 63, 70 (Ala.2007). Simply stated, ‘ “[a] summary judgment is not proper if the movant has not complied with the requirements of Rule 56.” ’ 972 So.2d at 70 (quoting Northwest Florida Truss, Inc. v. Baldwin County Comm’n, 782 So.2d 274, 277 (Ala.2000)).”
White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d at 1054-55.
Pettaway’s unsupported statement in the renewed motion that there were no claims for injuries other than the lung injury claimed by Johnathan was re *1159 futed by Hooks in her response to the motion by specific references to claims in the complaint. We do not have the benefit of knowing what, if anything, was represented orally to the trial court about the remaining claims if a hearing on the renewed motion was held. The validity of those claims is not before us. Our review is limited to the record presented to us by the parties, and, based on that record, Pettaway failed to meet his initial burden of showing an absence of genuine issues of material fact as to Hooks’s additional claims. ‘“A summary-judgment movant does not discharge his initial burden to challenge the sufficiency of the evidence of a nonmovant’s claim by simply ignoring the claim.’ ” Tiller v. YW Hous. Partners, Ltd., 5 So.3d 623, 630 (Ala.Civ.App.2008) (quoting White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d at 1055).
For these reasons, we affirm the judgment in favor of Pettaway on the claim that Johnathan’s collapsed lung was caused by the accident and for any claims for damages for medical expenses asserted by Hooks, but we reverse the judgment on all remaining claims. The case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The name of this child is spelled "Johnathan” and "Jonathan" in different parts of the record. We use "Johnathan" for purposes of this opinion.

. The complaint was not included as part of the record on appeal.